IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MUSIE HAILE,                                             No. 3:14-cv-01996-HZ

                Plaintiff,                       OPINION & ORDER

    v.

COMMISSIONER SOCIAL
SECURITY ADMINISTRATION,

                Defendant.


Martin R. Cohen
4040 Douglas Way
P.O. Box 1229
Lake Oswego, OR 97035

Linda S. Ziskin
Ziskin Law Office
P.O. Box 753833
Las Vegas, NV 89136

       Attorneys for Plaintiff

1 - OPINION & ORDER

Janice E. Hebert
Assistant United States Attorney
U.S. Attorney's Office, District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

Martha A. Boden
Social Security Administration
Office of the General Counsel- Region X
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

       Attorneys for Defendant

HERNÁNDEZ, District Judge:

       Plaintiff Musie Haile brings this action for judicial review of the Commissioner's final decision denying his application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act and Disability Insurance Benefits (DIB) under Title II of the Social Security Act. This Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c)(3)). The Court reverses the Commissioner's decision and remands for further proceedings.

## PROCEDURAL BACKGROUND

       Plaintiff applied for SSI and DIB on May 23, 2011, alleging an onset date of April 13, 2011. Tr. 182, 190.[1] His application was denied initially and on reconsideration. Tr. 104, 117, 122, 126. On May 6, 2013, Plaintiff appeared, with counsel, for a hearing before an Administrative Law Judge (ALJ). Tr. 39-60. On May 16, 2013, the ALJ found Plaintiff not disabled. Tr. 18-38. The Appeals Council denied review. Tr. 1.

## FACTUAL BACKGROUND

       Plaintiff alleges disability based on a traumatic brain injury and ankle injury, sustained as the result of an industrial accident in April 2011. Tr. 231, 281, 389. The ALJ also found that

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 15.

Plaintiff suffers from an adjustment disorder with symptoms of depression and anxiety. Tr. 23. Plaintiff was 41 years old on the alleged disability onset date. Tr. 32. He has limited education. Tr. 32. He has past work experience as a truck driver and a taxi driver. Tr. 218, 486.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. See, e.g., Valentine v. Comm'r, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. Id.

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. 137 at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity to perform "past relevant work." 20 C.F.R. §§

404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 13, 2011, the alleged onset date. Tr. 23. Next, at steps two and three, the ALJ determined that Plaintiff has the severe impairments of traumatic brain injury, status post ankle fracture, cognitive disorder not otherwise specified, and adjustment disorder with symptoms of depression and anxiety, but that the impairments or combination of impairments did not meet or medically equal the severity of one of the listed impairments. Tr. 23. At step four, the ALJ concluded that Plaintiff has the following residual functional capacity:

> [He can] perform light work as defined in 20 CFR § 404.1567(b) and § 416.967(b) except he can occasionally lift and/or carry 20 pounds. He can frequently lift and/or carry 10 pounds. He can generally stand and walk approximately six of eight hours. There are no sitting limitations. He can occasionally climb stairs and ramps, but should not engage in any other climbing. Nor should he be required to balance. He should no more than occasionally stoop, kneel, crouch, or crawl. He should avoid concentrated exposure to workplace hazards, i.e. dangerous machinery and heights. He could sustain employment for simple, routine tasks. It would be problematic for the claimant to sustain employment of more skilled complex tasks.

Tr. 25. With this residual functional capacity, the ALJ determined that Plaintiff is unable to perform any of his past relevant work. Tr. 833. However, at step five, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform,

404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 13, 2011, the alleged onset date. Tr. 23. Next, at steps two and three, the ALJ determined that Plaintiff has the severe impairments of traumatic brain injury, status post ankle fracture, cognitive disorder not otherwise specified, and adjustment disorder with symptoms of depression and anxiety, but that the impairments or combination of impairments did not meet or medically equal the severity of one of the listed impairments. Tr. 23. At step four, the ALJ concluded that Plaintiff has the following residual functional capacity:

> [He can] perform light work as defined in 20 CFR § 404.1567(b) and § 416.967(b) except he can occasionally lift and/or carry 20 pounds. He can frequently lift and/or carry 10 pounds. He can generally stand and walk approximately six of eight hours. There are no sitting limitations. He can occasionally climb stairs and ramps, but should not engage in any other climbing. Nor should he be required to balance. He should no more than occasionally stoop, kneel, crouch, or crawl. He should avoid concentrated exposure to workplace hazards, i.e. dangerous machinery and heights. He could sustain employment for simple, routine tasks. It would be problematic for the claimant to sustain employment of more skilled complex tasks.

Tr. 25. With this residual functional capacity, the ALJ determined that Plaintiff is unable to perform any of his past relevant work. Tr. 833. However, at step five, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform,

such as garment folder, fruit washer, and electrode cleaner. Tr. 32-33. Thus, the ALJ determined that Plaintiff is not disabled. Tr. 33.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

The court must weigh the evidence that supports and detracts from the ALJ's conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. Id. (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)); see also Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. Id.; see also Batson, 359 F.3d at 1193. However, the court cannot not rely upon reasoning the ALJ did not assert in affirming the ALJ's findings. Bray, 554 F.3d at 1225-26 (citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947)).

## DISCUSSION

Plaintiff contends that the ALJ erred in his consideration of (1) the medical opinion of examining psychologist Dr. Wong-Ngan, (2) the credibility of Plaintiff, and (3) the vocational expert testimony. The Court agrees that the ALJ erred.

5 - OPINION & ORDER

I.          Examining Psychologist Dr. Wong-Ngan

Dr. Julia Wong-Ngan, Ph.D., performed a neuropsychological evaluation of Plaintiff on February 25-26, 2013. Tr. 479-492. In conjunction with her examination, she reviewed Plaintiff's medical records as well as Dr. Gregory Cole's neuropsychological evaluation report and job analyses provided by Tom Weiford, CRC. Tr. 479. She conducted a clinical interview and administered a number of psychological tests. Id.

Based on the records and test results, Dr. Wong-Ngan concluded that Plaintiff could not return to his past work as a truck driver or a taxi driver. Tr. 486. Dr. Wong-Ngan noted Plaintiff's "variable attention, slowed mental tracking and speed" and "moderate to severe memory deficits." Tr. 486-87. She assessed Plaintiff with a current global assessment of functioning (GAF) score of 50-55[2]. Tr. 488. In her opinion, Plaintiff would have mild to moderate impairment adapting and responding to new environments. Tr. 487.

Regarding employment, Plaintiff would have "at least" moderate difficulty sustaining concentration, persistence, and pace in an eight-hour setting. Tr. 487. Dr. Wong-Ngan wrote:

> [Plaintiff] will have some limitations in learning new information and activities, and performing at a normal pace. He may need accommodations, and may need to apply compensatory strategies. For example, he would benefit from more time to learn and complete tasks. He might work better independently and at his own pace. He should minimize distracting environments and multi-tasking. He may have to rely on notes and other memory aids. Vocational evaluation might be able to address suitable types of employment, given his specific deficits. Perhaps volunteer work might be an appropriate step to evaluate potential for gainful employment.

Tr. 486.

---

[2] A GAF score of 41-50 indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (DSM–IV–TR) (4th ed. 2000). The Commissioner has determined the GAF scale "does not have a direct correlation to the severity requirements in [the Social Security Administration's] mental disorders listings." McFarland v. Astrue, 288 F. App'x 357, 359 (9th Cir. 2008) (quoting 65 Fed. Reg. 50,746, 50,765 (Aug. 21, 2000)).

Dr. Wong-Ngan completed a mental residual functional capacity assessment of Plaintiff. Tr. 489. She indicated that Plaintiff was markedly limited in his ability to understand and remember detailed instructions. Tr. 489. Plaintiff was moderately limited in his ability to remember locations and work-like procedures, carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual with customary tolerances, complete a normal workday and workweek without interruptions from psychologically-based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, and respond appropriately to changes in the work setting. Tr. 489-90. As to all other mental activities listed in the assessment, Dr. Wong-Ngan found Plaintiff not significantly limited. Id.

Social security law recognizes three types of physicians: (1) treating, (2) examining, and (3) nonexamining. Holohan v. Massanari, 246 F.3d 1195, 1201–02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). "To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence. If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).

The ALJ gave Dr. Wong-Ngan's opinion "some weight" because it is "generally supported by objective findings." Tr. 31. The ALJ indicated that he incorporated Dr. Wong-Ngan's opinion into the residual functional capacity (RFC) by limiting Plaintiff to simple, routine tasks. Tr. 31. He explained that Dr. Wong-Ngan specifically found that Plaintiff's ability to sustain a routine and understand, remember, and carry out very short and simple instructions is not significantly limited. Tr. 31.

7 - OPINION & ORDER

The ALJ does not provide any reasons for discounting the remainder of Dr. Wong-Ngan's opinion, nor does he specify which portions of her opinion he rejects. Accordingly, it is impossible for this Court, even assuming that Dr. Wong-Ngan's opinion was contradicted by other doctors' opinions, to determine whether or not the ALJ had specific and legitimate reasons to only afford Dr. Wong-Ngan's opinion "some weight," rather than to adopt it in its entirety. See Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (failure of ALJ to provide reasons will usually not be harmless error because the reviewing court cannot speculate as to the grounds for the ALJ's conclusion).

Dr. Wong-Ngan found that Plaintiff had numerous other moderate limitations that are not captured by a limitation to simple, routine work. For example, as listed above, Dr. Wong-Ngan noted Plaintiff's moderate to severe memory deficits and limitations to Plaintiff's ability to perform at a normal pace. Tr. 486-90. The ALJ erred by only giving limited weight to Dr. Wong-Ngan's opinion without providing specific and legitimate reasons for rejecting these other limitations. Furthermore, because the ALJ did not pose a hypothetical to the VE that included all of these limitations, the Court is unable to say if Dr. Wong-Ngan's opinion, even if fully credited, establishes disability.

II.     Plaintiff's credibility

The ALJ is responsible for determining credibility. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009). Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering. Brown-Hunter, 806 F.3d at 493; see also Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). When determining the credibility of a claimant's complaints of pain or other limitations, the ALJ may properly consider

an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989); see also Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995).

Here, the ALJ discounted Plaintiff's credibility because Plaintiff had received "only conservative and routine treatment following initial care for his injuries." Tr. 30. Plaintiff took only an over-the-counter drug (Advil) for his headaches and, at the time of the 2013 hearing, Plaintiff had not seen a doctor since 2011. Id. The ALJ found that such medication was not consistent with the alleged severity of Plaintiff's impairments and that the treatment did "not reveal a need for functional limitations greater than indicated in the residual functional capacity." Id. However, the ALJ did not identify any specific portion of Plaintiff's testimony that he rejected. Instead, the ALJ stated that Plaintiff's "numerous subjective complaints" were not "fully persuasive or consistent with his work history and the medical evidence." Tr. 30.

As the Ninth Circuit has recognized, there are "any number of good reasons" that a Plaintiff may not seek treatment. Fair, 885 F.2d at 603. Here, the ALJ acknowledged that Plaintiff did not have medical insurance and Plaintiff testified that he stopped seeing a doctor and pursuing therapy because it was too expensive. Tr. 26, 44. Yet the ALJ did not provide any explanation as to why Plaintiff's lack of insurance and financial resources would not mitigate the ALJ's negative inference drawn from Plaintiff's failure to seek treatment. Plaintiff cannot be denied benefits for failing to obtain treatment if he cannot afford that treatment. Gamble v. Chater, 68 F.3d 319, 321 (9th Cir. 1995). Furthermore, the ALJ acknowledged that Plaintiff testified that Advil only "somewhat" relieved his pain from headaches. Tr. 26; see also Tr. 47 (Advil only relieved the pain "a little bit."). Plaintiff testified that he had tried to take Oxycodone

but the medication caused him stomach pain and he stopped taking it. Tr. 46-47. The ALJ failed to acknowledge Plaintiff's explanation for Plaintiff's reliance solely on Advil.

Even more importantly, the ALJ provides no explanation for which of Plaintiff's "numerous subjective complaints" are at issue. An ALJ's failure to identify specifically which portions of a claimant's testimony are not credible and why they are not credible precludes a reviewing court from being able to meaningfully review the decision. See Brown-Hunter, 806 F.3d at 493. In addition, the ALJ's statement that Plaintiff's subjective complaints and alleged limitations are not consistent with his work history is hard to understand, given that Plaintiff did not work after his alleged onset date (when he sustained his workplace injury). Tr. 23, 30.

Finally, as to inconsistencies with the medical evidence, the Ninth Circuit recently explained that an ALJ errs by stating only a general, nonspecific finding regarding credibility after simply reciting the medical evidence. Brown-Hunter, 806 F.3d at 494. While the ALJ's recitation of the medical evidence in this case is detailed and substantial, it was error for the ALJ to fail to identify the testimony he found not credible because he, therefore, failed to link the medical evidence to specific testimony in support of his non-credibility determination. Id.

Defendant points to several inconsistencies between Plaintiff's testimony and the objective medical evidence as clear and convincing reasons to reject Plaintiff's credibility. However, it is the ALJ, not Defendant or this Court, that must identify which testimony he found not credible and which evidence contradicted that testimony. Id. This Court "cannot substitute [its] conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions." Id.

In summary, the reason provided by the ALJ in support of his negative credibility finding is not supported by substantial evidence in the record. The Ninth Circuit reiterated in a 2014 case that the "clear and convincing standard" is "not an easy requirement to meet" and is "'the most

demanding required in Social Security cases[.]'" Garrison v. Colvin, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting Moore v. Comm'r, 278 F.3d 920, 924 (9th Cir. 2002)). The ALJ failed to meet that standard in this case and thus erred by finding Plaintiff's subjective limitations testimony only partially credible.

III.     Vocational Expert Testimony

Plaintiff contends that the ALJ erred in relying on the vocational expert's testimony at step five of the decision-making process. At step five, the burden shifts to the Commissioner to establish that there are a significant number of jobs in the national economy that a claimant can do. Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. § 404.1566(b), 416.966(b) ("Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications."). In identifying the requisite work that "exists in the national economy," an ALJ may rely on vocational expert (VE) testimony. 20 C.F.R. §§ 404.1566(d), (e); 416.966(d), (e) (agency will take administrative notice of "reliable job information" including that from vocational experts); Social Security ruling 00-4p (agency uses vocational experts at steps four and five of the sequential analysis).

Here, based on the ALJ's RFC assessment, the VE testified that Plaintiff could perform the jobs of garment folder, fruit washer, and electrode cleaner, as defined by the Dictionary of Occupational Titles (DOT). Tr. 56. The VE testified that each of these jobs exists in significant numbers nationally and in the region of Oregon and Idaho. Id. In order to obtain the numbers for each job, the VE considered the populations of Oregon and Idaho, and relied upon data from the Bureau of Labor Statistics' Standard Occupational Classification (SOC) code system.[3]

---

[3] The 2010 SOC system, the system currently in use, contains 840 detailed occupations, aggregated into 461 broad occupations. In turn, the SOC combines these 461 broad occupations

11 - OPINION & ORDER

Plaintiff contends that the VE's testimony was unreliable because the VE was unable to state with certainty the number of DOT job titles included in each SOC code. Plaintiff raises a legitimate problem with the current process by which a VE may determine the number of jobs that exist in the national economy. While the parties do not cite, and this Court does not find, a Ninth Circuit opinion directly addressing this issue, other circuit courts have weighed in. See Alaura v. Colvin, 797 F.3d 503, 507 (7th Cir. 2015); Guiton v. Colvin, 546 Fed. Appx. 137, 143–45 (4th Cir. 2013); Brault v. Soc. Sec. Admin., Com'r, 683 F.3d 443, 446 (2d Cir. 2012). The Second Circuit Court of Appeals explained the relationship between the DOT and sources such as the SOC code system:

> The DOT gives a job type a specific code—for example, "295.467–026 Automobile Rental Clerk"—and establishes, among other things, the minimum skill level and physical exertion capacity required to perform that job. Because of the detailed information appended to each DOT code, the codes are useful for determining the type of work a disability applicant can perform. In fact, the DOT is so valued that a VE whose evidence conflicts with the DOT must provide a "reasonable explanation" to the ALJ for the conflict. See Social Security Ruling (SSR) 00–4p, Policy Interpretation Ruling: Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions, 2000 WL 1898704 (Dec. 4, 2000). The DOT, however, just defines jobs. It does not report how many such jobs are available in the economy.
> ***
> [The] Standard Occupational Classification System ("SOC") code, [is] a new system the Bureau of Labor Statistics has embraced to replace the DOT code regime. SOC codes, however, are not useful for disability proceedings because they do not contain the same detailed occupational information as DOT codes. Thus a VE must use some method for associating SOC-based employment numbers to DOT-based job types. The problem, however, is that DOT codes are much more granular than SOC codes[.]

Brault, 683 F.3d at 446. The only reliable statistics available are for broad categories of jobs, which may encompass not only the DOT code chosen by the VE to represent a job a claimant is capable of doing, but also many other jobs. Alaura, 797 F.3d at 507 ("The problem appears to be

---

into 97 minor groups and 23 major groups. See Standard Occupational Classification, Bureau of Labor Statistics, http://www.bls.gov/soc/ (last visited January 25, 2016).

that the only reliable statistics are census data for broad categories of jobs, rather than for jobs in the narrower categories that the applicant for benefits is capable of doing.").

For example, in this case, the VE stated that Plaintiff could perform the job of a garment folder and that there are 1,600 garment folders in the region of Oregon and Idaho, and 84,000 garment folders nationally. Tr. 56. The VE testified that he obtained these numbers from SOC codes; however, he also acknowledged that the corresponding SOC code could potentially include many other jobs besides garment folder. Tr. 58-59. Plaintiff's attorney asked, "So there could be five, or there could be fifty [other jobs included in the same SOC code]?" The VE conceded that he did not know. In other words, the 1,600 and 84,000 estimates may significantly overstate the number of garment folder jobs available. The problem is that the DOT-specific job numbers Plaintiff wanted the VE to provide do not exist. See Guiton, 546 F. App'x at 142 ("Thus, if we required a VE to produce job statistics specific to the DOT-coded occupations a claimant can perform, it is unlikely that the Commissioner would ever succeed in satisfying her burden.").

Because of the inherent imperfection with the system, as described in Brault, Plaintiff in this case raises a reasonable question about the reliability of the numbers presented by the VE. Plaintiff argues that, because the VE acknowledged that the numbers provided were imprecise, the ALJ erred in relying on the VE's testimony. However, while the Seventh Circuit has adopted a duty to inquire into a claimant's objections about the reliability of a VE's testimony, no other circuit has adopted this rule. Contrast Donahue v. Barnhart, 279 F.3d 441, 446 (7th Cir. 2002) with Brault, 683 F.3d at 449 ("No court outside the Seventh Circuit has agreed with Donahue and its offspring."). The Ninth Circuit, while not explicitly rejecting Donahue, held that an ALJ's reliance on testimony the VE gives in response to the hypothetical is proper. Bayliss v. Barnhart,

13 - OPINION & ORDER

427 F.3d 1211, 1217 (9th Cir. 2005) (explaining that Rule 702 and a Daubert analysis of the reliability of experts does not apply in Social Security administrative proceedings). "An ALJ may take administrative notice of any reliable job information, including information provided by a VE." Id. (citing Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995)). "A VE's recognized expertise provides the necessary foundation for his or her testimony." Id. "Thus, no additional foundation is required." Id.

Nevertheless, while the foundation for the VE's testimony cannot be challenged here, this Court must still evaluate whether the VE's testimony, including his methods, constituted "substantial evidence," such that the ALJ's reliance on it was proper. A reasonable mind need not accept obvious errors in a vocational expert's testimony that lead to implausible results. Farias v. Colvin, 519 F. App'x 439, 440 (9th Cir. 2012) (unpublished) (a reasonable mind "would not accept the VE's testimony that there are 3,600 head dance hall hostess positions in the local economy and 342,000 in the national economy"; discarding expert testimony left ALJ decision unsupported by substantial evidence). Moreover, a reviewing court should "weigh both the evidence that supports and the evidence that detracts from the ALJ's factual conclusions." Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519, 522 (9th Cir. 2014).

It is important to remember that, at this stage of the ALJ's analysis, it is the Commissioner's burden to show that there are sufficient jobs available that Plaintiff could perform despite his physical limitations. If the Commissioner does not meet her burden, then the ALJ's adverse decision is unsupported and cannot stand.

Two cases from this district are instructive. In Schwanz v. Astrue, No. 10-CV-795-HZ, 2011 WL 4501943, at *8 (D. Or. Sept. 28, 2011), this Court held that an ALJ properly relied on VE testimony regarding the number of available jobs when the VE "stated that the numbers of

jobs provided were 'fair estimates,' and explained that she relied and based her estimates upon 'those extrapolations from the data available to experts in the field and practitioners.'" Similarly, in Abdich v. Colvin, No. 6:12-CV-02172-SI, 2013 WL 6839281, at *8 (D. Or. Dec. 27, 2013), Judge Simon found that the VE's testimony constituted substantial evidence of non-disability, when "the VE stated that she relied on occupational surveys done by the Bureau of Labor and the Oregon Employment Service, as well as on her own research, to formulate estimates of the number and types of jobs that she believed that Mr. Abdich could perform."

This case differs from Schwanz and Abdich in that the VE here testified that the only data he relied on in formulating his estimates came from the SOC codes. The VE did not, as in Schwanz, extrapolate from that data to come up with an estimate or, as in Abdich, rely upon various surveys as well as his own research. To the contrary, the VE candidly admitted that he did not know whether the data he relied upon was an accurate portrayal of the number of jobs available that Plaintiff could perform. Accordingly, this Court finds that the VE's testimony did not constitute substantial evidence upon which it was reasonable for the ALJ to rely. Compare Muro v. Colvin, No. EDCV 14-00096-DFM, 2014 WL 5419550, at *4 (C.D. Cal. Oct. 23, 2014) ("In sum, because the VE provided no information as to the methodology and source of her testimony regarding the availability of the individual representative jobs, remand is appropriate."), and Clark v. Astrue, 2010 WL 2924237, *3 (D. Me. July 19, 2010) (remand warranted where ALJ "relied on the vocational expert's testimony as to the numbers of regional and national jobs available, but the vocational expert "essentially admitted that he ... [relied] on published raw numbers, which pertained not to the specific DOT code-identified jobs at issue but rather to groups of jobs of differing skill and exertional levels that happened to contain the three specific jobs"), with Nichols v. Astrue, 2012 WL 474145, *12–*13 (D. Mass. Feb.13, 2012)

15 - OPINION & ORDER

(rejecting plaintiff's challenge to vocational expert's testimony as to numbers of jobs in the regional and national economies where vocational expert did not simply cite "the raw numbers with no further elucidation or statement of the accuracy of their estimates[,]" but, rather, testified "that the numbers she gave were the best information available"), and Poisson v. Astrue, 2012 WL 1067661, *9 (D. Me. Mar. 28, 2012) (rejecting plaintiff's challenge to reliability of vocational expert's testimony where vocational expert "explained why she thought that the underlying data was reliable and endorsed the numbers derived therefrom as accurate"), report and recommendation adopted, 2012 WL 1416669 (D. Me. Apr. 24, 2012).

IV.     Remand for Additional Proceedings

In social security cases, remands may be for additional proceedings or for an award of benefits. E.g., Garrison v. Colvin, 759 F.3d 995, 1019 (9th Cir. 2014) (explaining that if "additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded [,]" but "in appropriate circumstances courts are free to reverse and remand a determination by the Commissioner with instructions to calculate and award benefits").

To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test. Id. at 1020; see also Treicher v. Comm'r, 775 F.3d 1090, 1100 (2014) ("credit-as-true" rule has three steps). First, the ALJ must fail to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. Garrison, 759 F.3d at 1020. Second, the record must be fully developed and further administrative proceedings would serve no useful purpose. Id. Third, if the case is remanded and the improperly discredited evidence is credited as true, the ALJ would be required to find the claimant disabled. Id. To remand for an award of benefits, each part must be satisfied. Id.

The "ordinary remand rule" is "the proper course" except in rare circumstances. <u>Treicher</u>, 775 F.3d at 1101. Here, remand for additional proceedings is the proper course. As discussed above, this Court cannot say that the ALJ improperly rejected portions of Dr. Wong-Ngan's opinion or Plaintiff's testimony; instead, the ALJ's opinion is ambiguous and lacks explanation. This does not satisfy the first element of the remand test. Additionally, because the RFC omits limitations found by Dr. Wong-Ngan and testified to by Plaintiff, which may be accepted upon further review, the record is not fully developed. Finally, as discussed above, the ALJ must elicit further testimony from the VE in order to determine whether substantial evidence exists that there are significant numbers of jobs that Plaintiff can perform. Accordingly, remand for additional proceedings is appropriate.

## CONCLUSION

The Commissioner's decision is reversed and remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated this __14__ day of __February__, 2016

_____
MARCO A. HERNÁNDEZ
United States District Judge

17 - OPINION & ORDER